IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITE HERE, LOCAL 1, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25 C 13951 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| AMBASSADOR HOTEL GROUP LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Unite Here, Local 1, sued defendant Ambassador Hotel Group LLC, alleging that defendant failed to enforce an arbitration decision in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. After defendant failed to respond to the complaint or otherwise appear, the court entered a default judgment order, confirming the arbitration award at issue. Defendant now moves to vacate the default judgment under Fed. Rs. Civ. P. 55(c), 60(b)(1), and 60(b)(6). For the reasons below, the court denies defendant's motion to vacate.

**BACKGROUND**

According to the complaint, plaintiff is a labor organization with a principal office in Illinois, and is the exclusive collective bargaining representative of certain employees of defendant—a hotel. In March 2025, defendant bought a hotel property in Chicago. Around that time, it entered into an "Assumption Agreement" with plaintiff, agreeing to be bound by a collective bargaining agreement—including its grievance and arbitration procedures, and its requirement that defendant retain certain union employees.

Defendant thereafter fired union employee Jermaine Gillen, who had been employed prior to the sale. In response, plaintiff filed a grievance, protesting Gillen's firing. This advanced to arbitration, with the parties agreeing to set the matter for a hearing on October 28, 2025. But on the morning of the hearing, defendant tried to cancel the hearing, and ultimately never showed.

In early November 2025, the arbitrator issued a final and binding bench decision (followed shortly thereafter by a second "full decision"), ordering Gillen to be reinstated and made whole for lost wages and benefits. But defendant refused to comply with the arbitration award, in violation of the CBA and § 301 of the LMRA.

So plaintiff filed its complaint on November 13, 2025. Plaintiff thereafter filed a returned summons on November 19, 2025 (Dkt. 7), which states that the summons and complaint were served on November 18, 2025, on Illinois Corporation Service Company, the registered agent for defendant—making the answer due December 9, 2025.

Defendant did not respond or answer by that date, and two days later, plaintiff filed a motion for default judgment. Another week passed without defendant appearing. So on December 19, 2025, the court entered a default judgment order, confirming the arbitration award at issue. Roughly two weeks later, on January 5, 2026, counsel for defendant filed an appearance in the case, and defendant moved to vacate the default judgment.

## DISCUSSION

Defendant moves to vacate under Rule 55(c) and Rule 60(b). Rule 55(c) states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Both parties agree that because defendant seeks to

vacate default judgment, it must rely on Rule 60(b). They are correct. See Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Con-Tech Carpentry, LLC, 806 F.3d 935, 937 (7th Cir. 2015) (explaining that after the district court enters default judgment, a litigant must seek relief under Rule 60(b)). Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Defendant seeks relief here under Rule 60(b)(1) and Rule 60(b)(6). Starting with Rule 60(b)(1), for the court to set aside the default judgment under Rule 60(b)(1), defendant must show three elements: good cause for the default, quick action to correct it, and a meritorious defense to the underlying allegations. Acosta v. DT & C Glob. Mgmt., LLC, 874 F.3d 557, 560 (7th Cir. 2017); Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012). Each element is mandatory, and so without a showing of "good cause" even a meritorious defense does not justify vacating the default judgment. See Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996) ("Moltan has not identified good cause for its default . . . . This lack of proof makes Moltan's quick action to cure the default immaterial and eliminates the need for us to address the question of its allegedly meritorious defenses."); Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc., 28 F.3d 42, 46 (7th Cir. 1994) ("Imperial failed to clear the first hurdle when it did not show good cause for its

default. This would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense.").

This three-element "standard was originally formulated to evaluate a district court's decision concerning a motion to vacate an *entry* of default under Rule 55(c) . . ., but was eventually applied to structure decisions involving motions to set aside default *judgments* under Rule 60(b)." Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994) (emphasis in original) (citation omitted). "While the tests are identical under either Rule 55(c) or Rule 60(b)," the "test under Rule 60(b) circumstances—where a default *judgment* has been entered—[is] much more limited and stringent." Id. (emphasis in original); see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc., 961 F.3d 942, 948 (7th Cir. 2020) ("The Rule 60(b) standard is applied more stringently than the Rule 55(c) good cause standard." (cleaned up)). That is because courts "interpret[ ] the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." Jones, 39 F.3d at 162; see also Wehrs, 688 F.3d at 890 ("Relief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances").

And so, while the Seventh Circuit obviously "favor[s] trial on the merits over default judgment," Cracco v. Vitran Exp., Inc., 559 F.3d 625, 631 (7th Cir. 2009), it has "long since moved away from the position of disfavoring default judgments," Pretzel & Stouffer, 28 F.3d at 47. In doing so, it has recognized the "strong" interests in not burdening court dockets, in the "legitimate reliance on the default by the nonmoving party," and in judges being "able to enforce

deadlines." McMahon v. S&M Auto Brokers, Inc., No. 24 C 09660, 2025 WL 327825, at *2 (N.D. Ill. Jan. 29, 2025) (cleaned up) (citing Seventh Circuit cases). It has also "characterized the district court's considerable latitude in" deciding whether to vacate a default judgment "as discretion piled on discretion." Wehrs, 688 F.3d at 890 (cleaned up).

Given that the test under Rule 60(b)(1) is limited and stringent, it is unsurprising that "[t]he burden of proof rests on the party moving to vacate the judgment." Trade Well Int'l v. United Cent. Bank, 825 F.3d 854, 861 (7th Cir. 2016). The court finds that defendant has not met its burden here.

**Good Cause**

Because the requirements under Rule 60(b)(1) for vacating default judgment "are steeper" than those under Rule 55(c) for vacating the entry of default, the "good cause" element of the test further "depends on excusable neglect." Con-Tech, 806 F.3d at 937. Or as the Jones court put it: "Rule 60(b)(1) and the standard for vacating default judgments requires that 'cause' for failure to respond be separated from '*good* cause,' and 'neglect' of litigation from '*excusable* neglect'"—meaning "at least the absence of any willful disregard for duties, simple carelessness, or negligence." 39 F.3d at 164 (emphasis in original). Simply stated, to show "excusable neglect," defendants must show that their "actions leading to default were not willful, careless, or negligent." Arwa, 961 F.3d at 949 (emphasis added). Both parties argue here that "excusable neglect" also requires the court to consider "all relevant circumstances," citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395-96 (1993).

Defendant argues that the relevant circumstances here "constitute excusable neglect." According to defendant, its "failure to appear was not a tactical or deliberate decision to ignore

this litigation." "Rather," it asserts, it "did not receive actual notice of the summons and complaint until December 22, 2025, due to an administrative breakdown in the handling of service through its registered agent and internal routing procedures." In support, defendant submits a declaration from Robert Falor, CEO of the Chicago Hotel Collection, LLC ("Chicago Hotel Collection" does business as "Ambassador Chicago Hotel"), in which he states:

> Ambassador did not intentionally ignore the federal lawsuit filed by Local 1. Ambassador did not receive actual notice of the summons and complaint at its business offices when service was made on the registered agent. . . . Ambassador first learned of this lawsuit and the default judgment on December 22, 2025, when its filing software system, CSC, emailed it to Ambassador. . . . Ambassador has not acted in bad faith, and any failure to respond earlier was the product of mistake and administrative error rather than an intent to delay or avoid this litigation.

In response, plaintiff argues that this explanation misses the mark. According to plaintiff: defendant does not dispute that service was properly made on its registered agent; "service on a registered agent constitutes service on the corporation"; a "corporate defendant bears responsibility for establishing reasonable internal procedures to ensure that litigation documents received by its agent are promptly routed and addressed"; and defendant's "conclusory assertions" about "failures in internal routing without any evidence to confirm such assertions" are insufficient.

What's more, plaintiff continues, defendant knew full well that the complaint was coming. Plaintiff asserts (with a declaration from her counsel in support) that defendant's counsel (the same counsel that filed the motion to vacate) called plaintiff's counsel the week before the complaint was filed to discuss the impending complaint, and to ask plaintiff to delay its filing for a week or so. Plaintiff's counsel obliged, but after hearing nothing further, she emailed him on November 13, 2025, explaining that the complaint would be filed that day, and

asking him whether he would accept service. Defendant's counsel responded to the email but ignored her request about service. She followed up a couple of hours later, confirming that she would be filing the complaint that day and again asking him to accept service. But he again ignored the request. So plaintiff formally served defendant's registered agent. When "a party is on notice that litigation is imminent and nevertheless fails to ensure that service is properly handled or that a response is timely filed," plaintiff concludes, "the resulting default simply cannot fairly be characterized as inadvertent."

In reply, defendant argues that plaintiff's evidence showing pre-filing communications between counsel confirms that defendant was "engaged in good-faith settlement discussions"—not willful delay. Defendant also asserts (for the first time) that, "[u]pon information and belief, Defendant was not properly served with a summons or complaint on November 18, 2025."

The court finds that defendant has failed to show excusable neglect. Defendant, "as the movant trying to upset a final judgment, ha[s] the burdens of both production and persuasion," and thus needed to "supply th[e] details" of "all the facts and circumstances" that support its claim of excusable neglect. In re Canopy Fin., Inc., 708 F.3d 934, 937 (7th Cir. 2013) (affirming denial of motion to vacate default judgment under Fed. R. Bankr. P. 9024, which "incorporates" Rule 60(b), where movant failed to establish excusable neglect under Rule 60(b)(1)). It has not done so here.

Beginning with defendant's reply argument that "[u]pon information and belief, Defendant was not properly served with a summons or complaint on November 18, 2025," that argument is waived. See The Ctr. for Self Leadership, Inc. v. PESI, Inc., No. 25 C 11339, 2026 WL 963123, at *13 (N.D. Ill. Apr. 9, 2026) ("arguments raised for the first time in a reply brief

are waived"). But even if it were not, defendant provides no evidentiary support for it anyway. And it conflicts with both the returned summons (Dkt. 7) and Falor's own declaration, in which he states that "service was made on the registered agent."

Defendant's assertion that there was "an administrative breakdown in the handling of service through its registered agent and internal routing procedures" fares no better. To be sure, a factually supported assertion of "misrouted" service might in certain circumstances show excusable neglect. For example, a litigant "might establish excusable neglect" if it shows that the "documents reached [the litigant]'s mailroom and were misrouted, despite [the litigant]'s use of ordinary care in handling legal papers." Canopy, 708 F.3d at 937 (discussing Cracco, 559 F.3d at 630-31). But defendant has not meaningfully "tried to show that this is what happened" here. Id. (finding that the defendant failed to carry its burden to show "excusable neglect" based on its assertion that it did not receive any of the relevant filings from its registered agent).

Indeed, defendant's only evidentiary support for its "administrative breakdown"-in-"routing" assertion is Falor's declaration that there was "mistake and administrative error," that defendant "did not receive actual notice of the summons and complaint at its business offices when service was made on the registered agent," and that defendant "first learned of this lawsuit and the default judgment on December 22, 2025, when its filing software system, CSC, emailed it to" defendant. To the extent that Falor's statements can even be viewed as supporting defendant's claim that there was a mishap between the registered agent and the routing procedures, they, along with the assertions in defendant's brief, ultimately raise more questions than they answer. For example: What exactly was the "administrative" error or breakdown? What were those "internal routing procedures"? Who at defendant is responsible and what

instructions did they give the agent? What is defendant's "filing software system, CSC," and how does it relate to service and the agent?

We have no answers. "For all we know," defendant "failed to tell the agent who within its administrative office should receive the papers, or supplied the agent with an incorrect name"—neither of which would establish excusable neglect. Canopy, 708 F.3d at 937. Bottom line: without any "details," the court cannot find excusable neglect. Id.

Defendant's failure to provide details is especially troubling, moreover, given that defendant now essentially admits that it had good reason to know that the complaint was being filed on November 13, 2025, and given that its counsel twice-ignored requests for him to accept service of it. The court agrees with plaintiff that defendant's failure to ensure that service is properly handled in the face of these circumstances can hardly be "characterized as inadvertent."

Finally, defendant's appeal to what it calls its "good-faith settlement discussions" also falls flat. For one thing, defendant fails to explain how its pre-complaint discussions are relevant to its misrouted-service excuse. In addition, even if it were relevant, and even if defendant had believed that a settlement was "imminent," it still would not "excuse neglect." US Foods, Inc. v. GSM Wings LLC, No. 25 C 12905, 2026 WL 2023146, at *4 (N.D. Ill. July 14, 2026) (cleaned up). Indeed, a defendant can "file[ ] an answer and ask[ ] the district court to stay the litigation while the parties negotiate[ ]" a settlement. Con-Tech, 806 F.3d at 937. But what it cannot do is "keep silent and hope that the equivalent of a stay w[ill] be afforded retroactively." Id. (affirming denial of Rule 60(b) motion to vacate a default judgment and explaining that district court did not abuse its discretion in rejecting defendant's argument "that

[the defendant] had not ignored the suit but had instead started negotiating with plaintiffs' lawyers, seeking a satisfactory settlement").

In short, defendant has "not produce[d] essential evidence and therefore [cannot] hope to carry its burden of persuasion" to show good cause or excusable neglect. Canopy, 708 F.3d at 937. As a result, the court denies defendant's motion to vacate the default judgment. See Con-Tech, 806 F.3d at 938 (affirming denial of motion to vacate default judgment without considering additional elements of swift action or meritorious defenses where defendant failed to show excusable neglect); Swaim, 73 F.3d at 722 (failure to identify good cause "makes Moltan's quick action to cure the default immaterial and eliminates the need for us to address . . . allegedly meritorious defenses"); Pretzel & Stouffer, 28 F.3d at 46 (Imperial's failure "to clear the first ['good cause'] hurdle" "would have been sufficient basis to refuse to vacate Imperial's default, even if it had a meritorious defense").[1]

[1] As mentioned above, defendant states that it is also moving under Rule 60(b)(6). Rule 60(b)(6) is a "residual clause, which covers 'any other reason that justifies relief' (that is, any reason other than ones in Rule 60(b)(1) to (5))." Choice Hotels Int'l, Inc. v. Grover, 792 F.3d 753, 754 (7th Cir. 2015). To obtain "relief under Rule 60(b)(6)," the movant must "establish that 'extraordinary circumstances' justify upsetting [the] final decision." Id. (citation omitted). Defendant mentions Rule 60(b)(6) and its standard in a single passing sentence, but does not meaningfully argue how it has met that standard. It has thus waived the argument. See PESI, 2026 WL 963123, at *13 ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived" (citation omitted)). Nor does the court find that there are any such extraordinary circumstances here.

## CONCLUSION

For the above reasons, the court denies defendant's motion [13] to vacate the default judgment, which remains enforceable.

So ordered.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: September 9, 2026**